IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY ANN RODRIGUEZ,

    Plaintiff,

v.                                                                                         Civ. No. 16-1059 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND**

**THIS MATTER** is before the Court on Plaintiff Mary Ann Rodriguez's Motion to Remand to Agency for Rehearing. Doc. 20. For the reasons discussed below, the Court will DENY Plaintiff's motion.

**I.    Background**

Plaintiff initially filed applications for disability insurance benefits and supplemental security income benefits in September 2009. AR 113, 117. Plaintiff alleged a disability onset date of March 2008. AR 137. In 2011, Plaintiff's claims were denied. Subsequently, upon review by Magistrate Judge Steven Vidmar, Plaintiff's claims were remanded for further consideration. *See Rodriguez v. SSA*, Civ. No. 12-1285, Doc. 21 (D.N.M. Nov. 26, 2013). While Plaintiff's claims were pending in federal court, Plaintiff filed a second application alleging a disability onset date of April 2012, which was ultimately granted. AR 424. This resulted in Plaintiff's claims regarding the period between March 2008 and March 2012 being before the ALJ on remand.

On May 5, 2016, the ALJ held a supplemental hearing on these claims. AR 424. The ALJ applied the grids and determined that Plaintiff became disabled as of January 9, 2011. Plaintiff

1

therefore now appeals the ALJ's determination that she was not disabled between March 2008, and January 2011. AR 432. Because the parties are familiar with the record in this case, I will reserve discussion of Plaintiff's relevant medical history for my analysis.

## II. Applicable Law

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

2

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Further, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the

3

evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

**III.    Analysis**

Plaintiff raises three issues for review.  Plaintiff contends that the ALJ failed to include functional limitations in her RFC that reflect limitations resulting from Plaintiff's use of a cane. Second, Plaintiff contends that the ALJ's RFC failed to account for Plaintiff's limitations in overhead reaching.  Finally, Plaintiff contends that the ALJ's decision rests upon unreliable vocational data.  The Court will address these issues in turn.

**A. The ALJ Adequately Addressed Plaintiff's Need to Use a Cane**

Plaintiff contends that the ALJ failed to include in her RFC any limitations stemming from Plaintiff's need to use a cane. Doc. 20 at 12.  Plaintiff argues that use of a cane, itself, does not constitute a functional limitation but is instead indicative of potential underlying limitations and restrictions necessitating its use.  Plaintiff therefore argues that the ALJ's inclusion in the RFC that Plaintiff must use a cane is error because it failed to express Plaintiff's underlying limitations in terms of her work-related abilities.

Plaintiff testified at the hearing that she began using a cane in 2008 due to instances of losing her balance and falling.  AR 451, 462.  In reviewing the medical evidence, the ALJ noted that "the variety of assistive devices appear to have been obtained [by Plaintiff] independently. Rather than doctors recommending items such as wheelchairs, the claimant requested them." AR 430.  The ALJ expressed skepticism as to an underlying condition necessitating such aids but noted that the record reflected that Plaintiff's complaints were consistent.  AR 430.  The ALJ further noted that Plaintiff's voluntary use of the cane likely "eliminated any future need for a

4

prescription." AR 430. The ALJ acknowledged that "[p]roviders also appeared to take the claimant's pain seriously and observed some pain behaviors when she would not expect them to be looking." AR 430. Based on this acknowledgment, the ALJ found "that a cane is necessary for walking." AR 430.

In consideration of Plaintiff's impairments, the ALJ ultimately determined that Plaintiff had "the residual functional capacity to perform sedentary work (lift 10 pounds occasionally, stand/walk for two hours in an eight hour workday and sit for six hours in an eight hour workday)…except she could never crouch, crawl, or kneel. The claimant could frequently handle and finger and relied on a cane to walk." AR 427. The ALJ posed a hypothetical consistent with the RFC to the vocational expert. AR 469. The vocational expert listed three occupations that could be performed given these limitations but clarified that the "[dictionary of occupational titles] does not specifically address the use of a cane, however, my testimony is based on experience and research into the labor market and employer tolerances." AR 469-70. The ALJ therefore found that prior to January 9, 2011, sufficient jobs existed in the national economy that Plaintiff could perform and found her not disabled during that timeframe. AR 431.

An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Soc. Sec. Rep. 96-8p. The reasoning behind the ALJ's RFC assessment must be sufficiently clear so as to allow the reviewing court an adequate opportunity to determine that the correct legal standards were applied. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

Upon review of the ALJ's decision, the Court rejects Plaintiff's argument that the ALJ failed to account for Plaintiff's need to use a cane. As Plaintiff acknowledged, the ALJ reviewed the medical evidence and, despite the lack of any medical documentation supporting such a determination, gave Plaintiff the benefit of the doubt and found that "a cane [was] necessary for walking." AR 430. The Court construes the ALJ's finding to be that Plaintiff needs to use a cane at all times when walking. In the RFC, the ALJ accordingly limited Plaintiff to sedentary work except that Plaintiff should "never crouch, crawl, or kneel" and "reli[es] on a cane to walk." AR 427. The ALJ posed hypotheticals to the ALJ consistent with this RFC and, in reliance on the vocational expert's testimony, determined that there were three sedentary, unskilled jobs existing in significant numbers in the national economy.

While the Court agrees, in principle, with Plaintiff's statement that there may be limitations and restrictions resulting from a claimant's need to use a cane, Plaintiff herself identifies no additional restrictions or limitations that would support a more restrictive RFC. As recognized by SSR 96-9p, the use of a cane, or other medically required hand-held assistive device, for walking will not generally support functional limitations beyond sedentary unskilled work. *Id.* at *7 ("if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slops, the unskilled sedentary occupational base will not ordinarily be significantly eroded."). Further, "an individual who uses a medically required hand-held assistive device in one hand [such as a cane] may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." *Id.* In sum, the ALJ adequately encompassed restrictions resulting from the need for Plaintiff to use a cane and Plaintiff does not identify any limitations
6

backed by medical evidence that would call into question the ALJ's conclusion that she could perform sedentary, unskilled occupations.

Furthermore, the Court concludes that Plaintiff's reliance on *Hickson v. Colvin*, Civ. No. 14-1094, Doc. 28 (Feb. 8, 2016) is distinguishable. The problem in *Hickson* was not just that the ALJ included a restriction in the RFC regarding the use of an assistive device, it was that the ALJ failed to address the assistive device's relation to Plaintiff's impairments: tinnitus and mild hearing loss. *See id.* at 10-11 ("although the ALJ assessment included the limitation that [p]laintiff needed a crutch to walk, she neither discussed why that limitation was included in her RFC assessment, nor did she discuss the implications that such a limitation might have on Plaintiff's ability to fulfill work-related requirements."). By way of example, the court noted that it was unable to reconcile the limitation in the RFC to the use of the assistive device with the ALJ's finding that the plaintiff was able to perform work at all exertional levels given that the assistive device would likely interfere with the plaintiff's ability to crouch, lift up to 50 pounds at a time, or frequently lift or carry up to 25 pounds. *Id.* at 12.

The present case stands in contrast to *Hickson* due to the ALJ's determination that Plaintiff needed the cane for walking. As noted above, the ALJ limited Plaintiff to sedentary work but with the further restriction that she should never crouch, crawl, or kneel. The ALJ accordingly tied Plaintiff's need to use cane with a restriction targeted toward walking and therefore limited her to sedentary work. As concluded above, Plaintiff fails to specifically identify any other restrictions supported by medical evidence that would necessitate reversing the ALJ's determination. The Court therefore rejects Plaintiff's argument on this point.

**B. The ALJ Adequately Addressed Plaintiff's Limitation in Reaching**

Plaintiff contends that the ALJ failed to account for her difficulties in overhead reaching. Doc. 20 at 14. Plaintiff's argument on this point borders on being underdeveloped. Plaintiff cites no medical evidence supporting such a limitation. Further, as noted by Defendant, Plaintiff fails to show how the ALJ's failure to include such a limitation is error because none of the jobs identified by the vocational expert involve overhead reaching. *See* Call-out Operator, DOT No. 237.367-014, 1991 WL 672186; Document Preparer, DOT 249.587-018, 1991 WL 672349, Table Worker Position, DOT 739.687-182, 1991 WL 680217. For these reasons, the Court rejects Plaintiff's argument.

## C. The ALJ's Finding Regarding the Occupation of Document Preparer is Not Error

As noted above, the vocational expert testified that one representative occupation an individual could perform with Plaintiff's RFC was Document Preparer, DOT 249.587-018, 1991 WL 672349. Plaintiff argues that the Court should take judicial notice that the job of document preparer is obsolete and no longer exists. Alternatively, Plaintiff argues that the Court should disregard the vocational expert's testimony that the job exists in sufficient numbers in the national economy.

Magistrate Judge Karen B. Molzen recently rejected what appears to be the exact argument attacking the occupational title of document preparer. *King v. Berryhill*, No. 16-1147 KBM, 2018 WL 851358, *11, (D.N.M. Feb. 12, 2018). In reliance on *Miliam v. Colvin*, No. 16-824-CBS, 2017 WL 2438991, *13 (D.Colo. June 6, 2017), Magistrate Judge Molzen explained that "the DOT is among five sources of 'reliable job information' noted in the Commissioner's regulations" and is entitled to deference. *King*, 2018 WL 851358 (internal quotation marks omitted). Thus, "Plaintiff's contentions on this issue are more a disagreement with the Commissioner's continued reliance on the DOT" and are better addressed to the Commissioner

8

in a request to amend the regulation." *Id.* (citing *Miliam* 2017 WL 2438991, *13).

Further, in regard to Plaintiff's contention that the numbers of available document preparer jobs "varies wildly," Magistrate Judge Molzen concluded that the Plaintiff cited "no other case, rule, or regulation that would require the ALJ to question the VE further about the number of jobs the VE found." "[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the requirements of identified jobs corresponds with the DOT and elicit a reasonable explanation for any discrepancy on this point." *Urioste v. Colvin*, No. 13-2855-MJW, 2014 WL 5465074, *5 (D. Colo. Oct. 28, 2014). During the May 5, 2016 hearing, the ALJ asked the VE to "categorize [claimant's] past work in terms of exertional and skill levels and give me the DOT numbers?" AR 468. After providing the ALJ the DOT information related to past relevant work, the VE provided the ALJ the DOT code numbers, exertional levels, and specific vocational preparation numbers corresponding to jobs the VE determined Plaintiff could perform given the hypothetical the ALJ posed. AR 469. Plaintiff's attorney then questioned the VE with regard to whether the DOT addressed certain aspects of Plaintiff's claimed disability. AR 470. In contrast to this record, Plaintiff cites no failure by the ALJ to comply with the appropriate legal standards in questioning the vocational expert. Ultimately, the Court agrees with Magistrate Judge Molzen's analysis under similar facts and rejects Plaintiff's contentions on this point.

**D. Substantial Evidence Supports the ALJ's Finding that Jobs Plaintiff Could Have Performed Existed in Significant Numbers in the National Economy**

Plaintiff contends that "a total of 55,600 jobs available in the national economy does not rise to the significant level as defined in 42 U.S.C. § 423(d)(2)(A)." Doc. 20 at 18. Plaintiff argues that this number of jobs is "borderline" and therefore requires remand so that the Court

can conduct the "more searching inquiry suggested by [*Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)] in doubtful cases." Doc. 20 at 18.

The Court first notes that Plaintiff's argument is premised on the Court adopting a factual finding the ALJ did not actually make. Plaintiff argues that if the Court were to divide the 55,600 jobs available in the national economy the ALJ found Plaintiff could perform by the number of states and territories of the United States, the number of jobs in the local economy would be approximately 1049. Doc. 20 at 18. Plaintiff compares this number to the 850-1000 jobs in *Urioste v. Astrue*, which the Court found triggered a *Trimiar* analysis, in contending that the number of jobs in the present case is "borderline." 11-867, Doc. 23 at 19-20 (D.N.M. May 24, 2012). A finding of the number of regional jobs is not determined, however, by a simple division of the number of jobs existing in the national economy with the number of states and territories in the United States. It is instead premised on expert testimony a vocational expert provides. Here, there is no such finding because the vocational expert testified to the number of jobs existing in the national economy (*see* AR 469) and it is proper for the ALJ to solely consider the national figure in his or her determination pursuant to 42 U.S.C. § 423(d)(2)(a). *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (concluding that "the proper focus generally must be on jobs existing in the national, not regional, economy").

This distinction is significant because the *Trimiar* decision focused on jobs available in the regional economy. 966 F.2d at 1330. Accordingly, many of the *Trimiar* factors are specifically directed toward the analysis of jobs available in the regional economy such as "the distance that the claimant is capable of travelling to engage in the assigned work" and "the isolated nature of the jobs." *Id.* Such factors would appear to have little to no bearing on the analysis of nationally available jobs. Indeed, Magistrate Judge Molzen recently addressed the

issue of whether the *Trimiar* analysis extended to the review of jobs available in the national economy. *King*, 2018 WL 851358 at *13. Judge Molzen stated that "'[t]he multi-factorial analysis required by *Trimiar* focuses on factors relevant in analyzing the true 'availability' of local job opportunities on a more particularized inquiry as to the specific claimant under consideration." *Id.* Thus, "[w]here the focus is on national availability of jobs…the particularized *Trimiar* inquiry would confuse the issues." *Id.* Judge Molzen therefore concluded that the "*Trimiar* analysis does not extend to the question of whether there are significant numbers of **nationally** available jobs." *Id.* (emphasis in original)); *see also Padilla v. Berryhill*, Civ. No. 16-106-KK, 2017 WL 3412089, *12 (D.N.M. March 28, 2017). The Court agrees with Magistrate Judge Molzen's analysis on this point. Because the issue before the Court does not involve a review of regionally available jobs, the Court rejects Plaintiff's specific contention that this case requires remand in order for the ALJ to conduct a *Trimiar* analysis.

The Court clarifies, however, that this does not mean that an ALJ's findings regarding the number of jobs existing in the national economy is beyond scrutiny. Rather, the issue remains as to whether the ALJ's finding is supported by substantial evidence. Such a determination may overlap with considerations laid out in *Trimiar*, such as the "reliability of the vocational expert's testimony." 966 F.2d at 1330. No such argument is before the Court, however. The Court rejects Plaintiff's attempt to manufacture a *Trimiar* analysis regarding jobs available in the local economy by, with no legal support, simply dividing the number of jobs available in the national economy by the number of states and territories within the United States.

Moreover, even assuming Plaintiff preserved an argument that substantial evidence does not exist to support the ALJ's conclusion that 55,600 jobs are significant in the national economy, this argument would fail. Plaintiff did not challenge the vocational expert's

qualifications below or on appeal. Further, to the extent that Plaintiff challenges the vocational expert's reliability on appeal, the Court rejected that argument above. Whether the existence of 55,600 jobs in the national economy is significant is the province of the ALJ. When generally addressing the process for determining whether a "significant number" of jobs exist (regardless of whether considering jobs available locally or nationally) the Tenth Circuit in *Trimiar* made clear that factual determinations such as whether the number of jobs is significant "should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular situation." 966 F.2d. at 1330 (quotation omitted). The ALJ determined that Plaintiff could perform jobs that existed in significant numbers in the national economy (AR 431, 432) and the Court does not now "presume to interpose [its] judgment for that of the ALJ." *Id*. at 1332. The Court concludes that substantial evidence supports the ALJ's determination on this point.

## IV. Conclusion

For the foregoing reason, the Court DENIES Plaintiff's Motion to Remand to Agency (Doc. 20).

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent